Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS with modifications the Opinion and Award of the Deputy Commissioner as follows:
 EVIDENTIARY RULING
After the close of the evidentiary record September 22, 1997, the plaintiff submitted a letter advising that he had returned to Dr. Gordon Kammire, and that Dr. Kammire was referring him for a neurological evaluation. The Deputy Commissioner did not admit this information into evidence since the plaintiff did not request leave at the hearing to submit additional medical evidence, nor did he advise the Commission or the defendants that he wished to seek additional medical evaluations. The Full Commission affirms the Deputy Commissioner's ruling.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in the plaintiff's Pre-Trial Agreement, dated August 7, 1997 and defendant's proposed Pre-Trial Agreement, dated August 11, 1997, and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case; the parties are properly before the Commission and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Companion Property Casualty Insurance Company was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The plaintiff sustained an injury by accident arising out of and in the course of his employment on August 22, 1994.
5. Thirteen pages of medical treatment records of Dr. Gordon Kammire were received into the record.
6. The issues for determination are:
a. What was plaintiff's average weekly wage?
 b. To what permanent partial disability compensation is the plaintiff entitled to receive as a result of the admittedly compensable injury?
 ***********
Based upon the competent evidence of record herein, the Full Commission adopts the Findings of Fact of the Deputy Commissioner with minor modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the admittedly compensable injury, the plaintiff was a forty-six year old male. The plaintiff worked as an upholsterer with the defendant.
2. On August 22, 1994, the plaintiff was removing material from a vehicle when he struck his right elbow on the vehicle door facing. The plaintiff was initially treated at the emergency room, and thereafter, returned to his job.
3. One of the issues to be determined is the amount of plaintiff's average weekly wage. The plaintiff testified that he worked ten hours per day, five days per week and earned $8.00 per hour.
4. In a signed statement dated April 3, 1997 (Exhibit, p. 16), Edward L. Parks, owner of the defendant-employer business, agreed that for the period covering one year before plaintiff's accident on August 22, 1994, the plaintiff was working only since the beginning of his employment in the spring of 1994; that his weekly pay was $400.00; that in addition to his payroll check plaintiff was paid with cash; that plaintiff was at all times a full-time employee working ten hours a day, five days a week and that plaintiff's paychecks alone will not show the true totals of his weekly compensation.
5. Mr. Parker later testified that based on his payroll records, plaintiff was not working full-time at the time of injury; however, he admitted that he could not verify that the payroll records were right. The payroll records, for example, do not show plaintiff as working on the date of his admitted injury; nor do they show that plaintiff also worked August 24, 1994 through August 26, 1994. Mr. Parker agreed that plaintiff worked August 24 through August 26th. Defendant-employer's bookkeeper, who prepared the records, did not testify.
6. Defendant-employer's payroll records do not accurately reflect plaintiff's pre-injury weekly wages as plaintiff was paid by a combination of cash and check. Cash payments are not reflected on the payroll records. Defendant-employer did not submit a Form 22 wage chart.
7. Based upon the greater weight of the evidence, plaintiff was earning an average weekly wage of $400.00 per week at the time of his injury giving rise to this claim, which yields a compensation rate of $266.68 per week.
8. The plaintiff sought medical treatment from Dr. Gordon Kammire on October 5, 1994, for pain and numbness in the distribution of the ulner nerve of his right hand. Plaintiff reported having originally sought treatment in the "emergency department" where he was put on Anaprox. After following a course of conservative treatment, Dr. Kammire initially diagnosed the plaintiff with a neuropathy of his ulner nerve, probably secondary to trauma. He later diagnosed the plaintiff as having "a significant cubital tunnel syndrome" on March 29, 1995.
9. The plaintiff continued to work for the defendant-employer in his regular job until April or May of 1995, when he left to start his own business upholstering and changing headliners in automobiles.
10. On October 5, 1995, Dr. Kammire performed surgery on plaintiff which consisted of an anterior transposition of the ulnar nerve at the right elbow. Plaintiff's surgery was causally related to his August 22, 1994 injury by accident arising out of and in the course of his employment. Dr. Kammire authorized the plaintiff to remain out of work post-operatively through November 27, 1995. At that time, the plaintiff was directed to start using his right hand to the extent that he found it comfortable and to try his regular job.
11. The plaintiff was out of work as a result of the surgery for a period of eight weeks from October 5, 1995 through November 30, 1995, returning to work on December 1, 1995.
12. Plaintiff testified that he earned less than $400.00 per week during a period of time after he returned to work on December 1, 1995 after his surgery. Plaintiff has not presented evidence of his diminished earnings.
13. Dr. Kammire found the plaintiff had reached maximum medical improvement on May 22, 1996, at which time he rated the plaintiff as retaining a fifteen percent (15%) permanent partial impairment to the right arm due to his elbow injury and the resulting elbow stiffness and decreased ulnar nerve sensation after surgery.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident to his right elbow arising out of and in the course of his employment on August 22, 1994 which resulted in cubital tunnel syndrome and caused the need for surgery.
2. As a result of plaintiff's admittedly compensable injury, plaintiff is entitled to temporary total disability compensation from October 5, 1995 through November 30, 1995, at the rate of $266.68 per week. N.C. Gen. Stat. § 97-29.
3. As a result of plaintiff's admittedly compensable injury, plaintiff is entitled to thirty-six weeks of permanent partial disability compensation at the rate of $266.68 per week, by virtue of the fifteen percent rating to his right arm. N.C. Gen. Stat. § 97-31(13).
4. The plaintiff is entitled to have the defendants pay all medical expenses arising from his compensable injury. N.C. Gen. Stat. §§ 97-2(19), and 25.
5. The plaintiff is entitled to interest on the award from the date of the initial hearing before the Deputy Commissioner August 18, 1997, at the legal rate of interest provided in N.C. Gen. Stat. § 24-1, eight percent (8%), until paid. N.C. Gen. Stat. § 97-86.2.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendants shall pay temporary total disability compensation to the plaintiff at the rate of $266.68 per week for the period from October 5, 1995 through November 30, 1995. Said compensation has accrued and shall be paid in a lump sum.
2. The defendants shall pay permanent partial disability compensation at the rate of $266.68 per week for thirty-six weeks as a result of the fifteen percent rating to plaintiff's right arm, commencing August 18, 1997. Said compensation has accrued and shall be paid in a lump sum.
3. Defendant shall immediately pay interest at the rate of eight percent (8%) on this award accruing from the August 18, 1997 date of hearing before the Deputy Commissioner. Said interest payment shall be paid directly to the plaintiff.
4. The defendants shall pay all medical expenses incurred as a result of plaintiff's compensable injury when bills for the same have been properly submitted to defendant and approved according to procedures adopted by the Commission.
5. Defendants shall pay the costs.
 *********** ORDER
Plaintiff moved for dismissal of defendants' appeal to the Full Commission upon the ground that the defendants did not file their notice of appeal on a timely basis. The Full Commission has been unable to verify delivery of the Deputy Commissioner's Opinion and Award of January 13, 1998, to defendants prior to February 3, 1998. Defendants' appeal was filed February 17, 1998. The Defendant's appeal is deemed to have been timely filed. Plaintiff's Motion to Dismiss is Denied.
 S/_________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/______________________ DIANNE C. SELLERS COMMISSIONER
S/______________________ RENÉE C. RIGGSBEE COMMISSIONER